DOUGLAS CLOUD AND PEGGY CLOUD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14973-88,  Filed December 9, 1991.
31425-88,
8297-89.

*Dale O. Lierman,* for the petitioner.
*Carolyn M. Smith,* for the respondent.

RUWE, *Judge:* Respondent determined deficiencies and additions to tax in petitioners' Federal income tax as follows:

| Year | Deficiency | Additions to tax | | |
| --- | --- | --- | --- | --- |
| | | *Sec. 6653(a)(1)* [1] | *Sec. 6653(a)(2)* | *Sec. 6661* |
| 1983 | $ 3,640.88 | $182.04 | 50 percent of the interest due on $3,640.88 | - - - |
| 1984 | 10,341.56 | 517.08 | 50 percent of the interest due on $10,341.56 | $2,585.39 |
| 1985 | 10,594.00 | - - - | - - - | 2,649.00 |

| Year | Deficiency | Additions to tax | | |
| --- | --- | --- | --- | --- |
| | | *Sec. 6653(a)(1)(A)* | *Sec. 6653(a)(1)(B)* | *Sec. 6661* |
| 1986 | $17,666.90 | - - - | - - - | $4,417 |

Following concessions, the issues for decision are: (1) Whether petitioners may deduct amounts paid to a county Democratic Party as business expenses in 1983, 1984, 1985, and 1986; (2) whether petitioners received unreported income of $4,135 during 1984; (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations for 1983 and 1984; and (4) whether petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax for 1984, 1985, and 1986.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference.

Petitioners were husband and wife. They filed joint Federal income tax returns for 1983, 1984, 1985, and 1986. Petitioners resided in Fairfield, Ohio, at the time they filed their petitions in this case. References to petitioner in the singular are to Douglas Cloud.

Petitioner works as a representative for the International Brotherhood of Electrical Workers. He is also an active

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

member of the Democratic Party in Butler County, Ohio, and has been since 1979. As a member of the Butler County Democratic Party, petitioner has taken part in party campaign activities, such as putting up signs and telephoning potential supporters, as well as donating money to the party. Petitioner was also on the party's executive committee. The executive committee had approximately 120 members and was the governing body of the Butler County Democratic Party.

In 1983, the chairman of the Ohio Democratic Party, James Ruvolo, met with the chairpeople of all the county Democratic Parties in the State. At that time, David L. Smith was chairman of the Butler County Democratic Party. At this meeting, Mr. Ruvolo told the county chairpeople that the State party would be requesting recommendations for the positions of deputy registrar of the State Bureau of Motor Vehicles. The State party would, in turn, recommend to the State of Ohio that these people be appointed as deputy registrars.

The deputy registrars were responsible for establishing and operating the State's license bureaus. These bureaus processed applications for motor vehicle registrations and driver's licenses. They also sold license plates, license plate renewal tabs, and laminated driver's licenses. Each of the services was provided at a charge of $1.50.

It was the practice of previous administrations in Ohio that the deputy registrars would make contributions to the political party in power that had recommended their appointment. That practice consisted of the deputy registrars' contributing 10 percent of their receipts or $.15 for each transaction conducted at the respective license bureaus.

At the time Mr. Ruvolo met with the county chairpeople in 1983, it was made known that each person appointed as a deputy registrar would "donate" to the county party 10 percent of receipts ($.15) on each transaction conducted at his license bureau. The deputy registrar was to make payment directly to the county party. The county party was then to forward $.05 of each $.15 to the Ohio Democratic Party. The bylaws of the State party provided for assessment of the county parties to help fund the State party's expenses. Transactions of the deputy registrar's office had

traditionally been perceived as a sound basis for that assessment.

Mr. Smith relayed information to the rest of the Butler County Democratic Party that four deputy registrar positions were available in their county. As there were many more interested individuals than available positions, the Butler County Democratic Party formed a committee consisting of seven party members to screen the applicants. Petitioner applied to the committee seeking recommendation for the position.

The requirements for recommendation were determined by the executive committee. Some of the qualities sought in an applicant were good business sense, a reputation for trustworthiness, past service to the party, and willingness to pay 10 percent of receipts to the party. Consequently, as part of the screening process it was made clear to all the applicants that a condition of being appointed was the applicant's willingness to pay a $.15 fee per transaction. All applicants understood that a commitment to make these payments was a prerequisite to recommendation. It was generally believed that failure to pay the transaction fee would result in loss of the appointment or nonrenewal of a registrar's contract the following year.

The screening committee ultimately decided on four individuals, petitioner and three other members of the executive committee, Mr. David L. Smith, Mr. Joe Schwartz, and Mr. Phillip Morrical, Jr., to fill the available positions in Butler County. This decision was ratified by the executive committee, and the names forwarded to the chairman of the State party, Mr. Ruvolo. The recommendation was followed, and all four were appointed deputy registrars.

A total of 244 deputy registrars were appointed in 1983 in Ohio's 88 counties. The registrar of motor vehicles appointed 262 deputy registrars in 1984, 267 in 1985, and 273 in 1986. Once appointed, an individual entered into a contract with the State to act as deputy registrar. These contracts were renewable on a yearly basis.

For the years 1983, 1984, 1985, and 1986, petitioner entered into written contracts with the State of Ohio to act as a deputy registrar. He operated two license bureaus in

the city of Hamilton, Ohio. Petitioner, Peggy Cloud, worked in the bureaus and handled all the day-to-day bookkeeping and record keeping.

Once the deputy registrars had been appointed, the Ohio Democratic Party began sending invoices to the Butler County Democratic Party each month. The invoices stated the total number of transactions conducted in each of the county's license bureaus for the month and assessed the amount due from the county party for the State party's share of the transaction fee. The treasurer of the Butler County Democratic Party billed each of the deputy registrars based on the number of transactions contained in the State invoice. If the deputy registrar overpaid his bill, the difference was refunded. If he underpaid it, the difference was added to the next bill.

Mr. Morrical, one of the deputy registrars appointed along with petitioner in 1983, operated a bureau in Oxford, a small town near the border of Ohio and Indiana. Due to its location the bureau had a low traffic volume. In 1985, Mr. Morrical, in order to maintain a satisfactory work force, increased the compensation of his bureau manager. As a result, the license bureau could no longer generate sufficient revenue to cover both the overhead and the 10-percent transaction fee. Consequently, Mr. Morrical discontinued paying the transaction fee to the party. Despite Mr. Morrical's failure to maintain payment of the transaction fee, his contract was renewed for the following 3 years.

Petitioner made payments to the Butler County Democratic Party, in accordance with the invoices, during the entire time he served as deputy registrar. Petitioner paid the following total amounts each year he operated the license bureaus:

| Year | Amount |
|------|--------|
| 1983 | $6,260 |
| 1984 | 16,698 |
| 1985 | 19,570 |
| 1986 | 20,037 |

Petitioners deducted the payments to the Butler County Democratic Party as commissions on Schedule C of their 1983 Federal income tax return. For taxable years 1984, 1985, and 1986, petitioners reduced their reported gross

income by the amounts paid to the Butler County Democratic Party. This method of accounting for gross income and amounts paid to the party during 1984, 1985, and 1986 was determined by petitioners' accountant. Petitioners do not argue that this method of accounting was correct. They simply argue that the 10-percent payments were deductible under section 162.

Petitioner also made additional contributions to State and county political parties and individual political campaigns which were unrelated to his receipts as a deputy registrar. Petitioners claimed no deductions for these additional contributions.

Respondent issued statutory notices of deficiency to petitioners with respect to taxable years 1983 through 1986 disallowing the 1983 deduction and including the payments to the Butler County Democratic Party in 1984, 1985, and 1986 in petitioners' income for those years.

## OPINION

The first issue for decision is whether the amounts petitioner paid to the Butler County Democratic Party with respect to his position as deputy registrar are deductible as a business expense under section 162. Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Generally speaking, an expense is "ordinary" when the paying thereof is the common and accepted practice in light of the time, place, and circumstance. *Welch v. Helvering*, 290 U.S. 111, 113-114 (1933). An expense is "necessary" if it is "appropriate and helpful" for "the development of the taxpayer's business." *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966). Whether a payment qualifies for deduction under section 162(a) is a factual issue which must be decided on the basis of all relevant facts and circumstances. *Commissioner v. Heininger*, 320 U.S. 467, 473-475 (1943). Respondent's determination is presumed correct and petitioners bear the burden of proving their entitlement to the disallowed expense deduction. Rule 142(a); *Welch v. Helvering, supra.*

Respondent argues that petitioner's payments to the Butler County Democratic Party were not "necessary" because his position as a deputy registrar was not depen-

dent upon such payments. After a consideration of all the evidence, we find that a reasonable person in petitioner's shoes would believe that his appointment and reappointment as a deputy registrar was dependent upon his agreement to contribute 10 percent of gross receipts to the Butler County Democratic Party. The practice of requiring deputy registrars to contribute 10 percent of their receipts to the political party in power was a common practice both prior to and during the years in issue, and the appointment of deputy registrars was dependent upon being recommended by the county and State party organizations.

Despite his argument that the contributions in issue were not required, respondent's brief seems to acknowledge the nexus between the contributions being made by deputy registrars and the acquisition and retention of their official positions when he states:

these contributions to the party invoked such significant public outrage that the legislature has since enacted a statute to make these contributions illegal. Ohio Rev. Code Ann. sec. 4503.32 (Baldwin 1989). This section, which became effective on Nov. 28, 1988, is entitled "Solicitation of Political Contributions from Deputy Registrars; Award or Termination of Contract Not to be Affected by Political Contributions." [2]

The fact that there were some exceptions to this practice does not change our conclusion. "[B]usiness, like everything else, can only be conducted upon prophecies, and prophecies

---

[2]Ohio Rev. Code Ann. sec. 4503.32 (Anderson 1990) states:

Sec. 4503.032 Offenses concerning political contributions.

(A) As used in this section, "candidate," "contribution," and "campaign committee" have the same meanings as in section 3517.01 of the Revised Code.

(B) No person shall knowingly solicit directly or indirectly, orally or by letter, or be in any manner concerned in soliciting any assessment, subscription, or contribution for any political party, for the governor or his campaign committee, or for any candidate for public office or his campaign committee from a person known by the solicitor to be a deputy registrar under contract with the registrar of motor vehicles.

(C) Neither the registrar nor any person shall award a deputy registrar contract to a person, or promise to do so, because that person pays an assessment or subscription to, or makes a contribution to, any political party, the governor or his campaign committee, or any candidate for public office or his campaign committee. Neither the registrar nor any person shall withhold a deputy registrar contract from a person, or threaten to do so, because that person fails to pay an assessment or subscription to, or fails to make a contribution to, any political party, the governor or his campaign committee, or any candidate for public office or his campaign committee. Neither the registrar nor any person shall terminate a deputy registrar contract awarded to a person, or threaten to do so, because that person fails to pay an assessment or subscription to, or fails to make a contribution to, any political party, the governor or his campaign committee, or any candidate for public office or his campaign committee.

(D) Whoever violates this section shall be fined ten thousand dollars.

are never infallible. * * * '[N]ecessary' in this connection only means necessary, if reasonable expectation proves well grounded." *Levitt & Sons, Inc. v. Commissioner,* 142 F.2d 795, 798 (2d Cir. 1944), revg. a Memorandum Opinion of this Court. In the case of the one exception made for a deputy registrar in Butler County, it was clear that the reason why Mr. Morrical stopped making contributions was that the location at which he operated did a relatively small volume of business, and payment of the 10-percent contribution would have made Mr. Morrical's operation unprofitable. That was not true with respect to petitioner's operation, and both the State and the Butler County Democratic Party organizations were well aware of the volume of petitioner's transactions as a deputy registrar.

Respondent's primary argument is that petitioner's payments, whether required or not, were "political contributions," and that political contributions are not deductible under any circumstances. Respondent relies solely on section 24[3] for the proposition that political contributions are not deductible. Respondent cites no other authority. Section 24 provides for a 50-percent tax credit for political contributions up to $100. This credit is allowed irrespective of whether the contribution is business related. Neither the language of section 24 nor the regulations thereunder prohibit deduction under section 162 of payments to a political party. We find nothing in section 24 indicating that it was in any way intended to preclude deductions for expenditures which would otherwise be deductible under section 162.

Petitioners argue that the payments were in accordance with a contractual obligation to the Butler County Democratic Party to pay 10 percent of bureau receipts as a condition precedent to appointment and renewal of petitioner's contract as deputy registrar. Petitioners contend that the payments consequently could not have been political contributions since "By their nature, political contributions are voluntary and, once made, are never the source of future

---

[3]Sec. 24, formerly sec. 41, was redesignated by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 494, 825. There was no change in the statutory provision. Sec. 24 applies to tax years beginning after Dec. 31, 1983. Sec. 41 applies to prior years. Sec. 24 was repealed for tax years beginning after Dec. 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 112(a), 100 Stat. 2085, 2108.

receipts by a contributor." Petitioners do not cite any authority for this proposition.

We perceive nothing within the definition of the term "contribution" that requires that a payment must be made without an expectation of deriving a present or future financial benefit in order to be a "contribution." Describing a contribution as "political" does nothing to preclude an expectation of financial gain. Section 24 defines a "political contribution" as "a contribution *or* gift of money to" (emphasis added) certain political organizations including State and local political parties. The Ohio and Butler County Democratic Parties fall within the organizations enumerated. There are clear instances in the Internal Revenue Code where the term "contribution" is used to describe payments made with an obvious business purpose and for which deductions are allowable. See, for example, section 404, which provides deductions for "contributions" by employers pursuant to certain stock bonus, pension, profit sharing, and other deferred compensation plans. See also section 106, the title of which describes payments by employers to employee accident and health plans as "contributions." Thus, we do not believe that petitioner's payments constitute something other than political contributions simply because he made them with the expectation of deriving financial gain.

We have found no statutory provision that specifically precludes deductibility under section 162 for political contributions made directly to a political party. However, our search for an answer to the question of whether political contributions can be deducted under section 162 has revealed at least four categories of politically related expenditures that are not deductible as business expenses under section 162. These four categories are: Expenditures for political influence in securing Government contracts; expenditures related to the acquisition of public office; expenditures for general lobbying and campaigning; and certain expenditures inuring to the benefit of a political party or candidate. Based on our analysis of these four categories, we find that petitioner's payments to the Butler County Democratic Party may not be deducted as ordinary and necessary business expenses.

*Expenditures for Political Influence in Acquiring Public Contracts*

It has long been established that "Payments made as the mere purchase price of political influence to obtain or hold public contracts cannot soundly be recognized as constituting 'ordinary and necessary expenses' of business operations, within the meaning of, and subject to income tax deduction under, [the predecessor of section 162(a)]." *Rugel v. Commissioner*, 127 F.2d 393, 395 (8th Cir. 1942); see *Harden Mortgage Loan Co. v. Commissioner*, 137 F.2d 282, 283 (10th Cir. 1943). This is true even though the person paid was not a Government official. In both *Rugel* and *Harden*, as in the instant case, the taxpayers paid non-Government officials to obtain concessions or contracts from State Government. In *Harden*, the taxpayer paid Government officials as well.

The taxpayer in *Rugel v. Commissioner, supra*, was in the business of selling revenue stamps used by States in taxing packaged liquor. In 1934, Missouri contracted to purchase revenue stamps from the taxpayer's firm. In the following year, the taxpayer learned that the State was buying some of its stamps from a competitor at a higher price. The State supervisor of liquor control had directed that orders for part of its revenue stamps be given to the competing firm.

A representative of the taxpayer's competitor, in order to secure the contract, had agreed to split his commissions on the contract with a precinct captain who was connected with the political boss of the city in which the State liquor supervisor resided. The taxpayer subsequently struck a deal with the same precinct captain, agreeing to pay him half of all commissions received on the sale of revenue stamps to Missouri in return for switching the rest of the State's business back to him. It was these payments that the taxpayer attempted to deduct and the disallowance of which the court sustained.

As in *Rugel*, petitioner in the instant case paid a percentage of his receipts in return for the payee's political influence in getting him a financially lucrative position. Being appointed deputy registrar was tantamount to being awarded a concession with respect to driver and vehicle license renewals in a given geographical area. Petitioner's

contract with the registrar of motor vehicles came up for renewal each year. The payments to the Butler County Democratic Party were the purchase price of the party's political influence to obtain and hold petitioner's position with the State of Ohio.

*Expenditures to Attain Public Office*

The seminal case on this issue is *McDonald v. Commissioner,* 323 U.S. 57 (1944). In *McDonald,* the taxpayer was appointed to serve an unexpired term as a State court judge, with the understanding that he would stand for reelection in the upcoming elections for the full term of 10 years. To obtain the support of his party he had to pay an "assessment" to the party, as did all candidates for office, which was based on the total prospective salary to be received while in office. The "assessment" ($8,000) was to be used for the support of the entire ticket. The taxpayer paid an additional $5,017.27 for his own campaign expenses. Respondent disallowed the deductions for these amounts and was ultimately upheld by the Supreme Court.

The Supreme Court stated several reasons for disallowing the claimed expenses. First, the expenses were incurred in *becoming* a judge rather than being a judge. Second, allowance of a deduction for such "assessments" would require the allowance of deductions for officials who paid such "assessments" out of party allegiance mixed or unmixed with a lively sense of future favors. Finally, to the extent that deductibility would be determined on a political party's policy of charging "assessments" to prospective or incumbent officeholders, deductibility would be controlled by the internal arrangements of a particular political party in disregard of the statutory restriction confining deductible expenses solely to outlays in the efforts or services from which the income flows. *McDonald v. Commissioner, supra* at 61; *Estate of Rockefeller v. Commissioner,* 762 F.2d 264, 266 (2d Cir. 1985), affg. 83 T.C. 368 (1984); see *Diggs v. Commissioner,* 715 F.2d 245 (6th Cir. 1983), affg. in part and revg. in part 76 T.C. 888 (1981); *Nichols v. Commissioner,* 511 F.2d 618 (5th Cir. 1975), affg. 60 T.C. 236 (1973).

The taxpayer's payment of the assessment in *McDonald* was no more voluntary, nor made with a lesser expectation

of future receipts than petitioner's payment of the Butler County Democratic Party assessments. As in *McDonald,* a commitment to make the payments was a prerequisite to the party's recommendation. Petitioner paid the assessments, as did the taxpayer in *McDonald,* for the support of his political party in acquiring public office. Petitioner's contract was subject to renewal each year. In other words, the payments were made pursuant to petitioner's commitment to make them for the purpose of acquiring the position of deputy registrar and obtaining reappointment in each subsequent year.

The fact that payments were made after petitioner was an incumbent deputy registrar makes no difference to our conclusion. As stated in *McDonald:*

To draw a distinction between outlays for reelection and those for election—to allow the former and disallow the latter—is unsupportable in reason. It is even more unsupportable in public policy to derive from what Congress has thus far enacted a handicap against candidates challenging existing officeholders. And so we cannot recognize petitioner's claim on the score that he was a candidate for reelection. [*McDonald v. Commissioner,* 323 U.S. at 63-64. Fn. ref. omitted.]

The fact that petitioner's office was not an elected position does not sufficiently distinguish the instant case from *McDonald* to make petitioner's expenses deductible. In *Estate of Rockefeller v. Commissioner,* 83 T.C. at 373-374, we disallowed deduction of expenses paid in connection with confirmation of the taxpayer's nomination to the office of Vice President of the United States. The reason supporting our decision was that the taxpayer's expenses were incurred in attaining congressional confirmation of his nomination, not in executing the functions of that office. 83 T.C. at 374.

*Expenditures for General Lobbying and Campaigning*

Section 162(e) generally allows deductions for business expenses paid or incurred in connection with appearances before or communications with legislative bodies with respect to legislation or proposed legislation related to a taxpayer's business.[4] This section was enacted in response

---

[4]Sec. 162 states:

SEC. 162(e). APPEARANCES, ETC., WITH RESPECT TO LEGISLATION.—

to the Supreme Court's opinion in *Cammarano v. United States,* 358 U.S. 498 (1959), which had disallowed deductions for such expenses on the basis of long-standing regulations which the Court found in themselves constituted an expression of sharply defined national policy. 358 U.S. at 508.[5] Section 162(e)(2) makes clear, however, that Congress did not wish to allow deductions for "contributions" which would be used for political campaigns for public office or attempts to influence the general public with respect to legislative matters, decisions, or referendums, regardless of business purpose. Sec. 162(e)(2); see *Southern Pacific Transportation Co. v. Commissioner,* 90 T.C. 771, 780-781 (1988).

It is the use to which expenditures are put that is relevant under section 162(e) and the accompanying regulations. For example, section 1.162-20(c)(3), Income Tax Regs., prohibits deduction of dues to a labor union or trade association to the extent they are used in connection with attempts to influence the public with respect to legislation or for participation in any political campaign. The motive or expectations of the payor are not relevant to the deductibility of such payments.

Petitioner's payments to the Butler County Democratic Party, one-third of which were forwarded to the Ohio Democratic Party, were used to fund the activities of both

---

(1) IN GENERAL.—The deduction allowed by subsection (a) shall include all the ordinary and necessary expenses (including, but not limited to, traveling expenses described in subsection (a)(2) and the cost of preparing testimony) paid or incurred during the taxable year in carrying on any trade or business—

    (A) in direct connection with appearances before, submission of statements to, or sending communications to, the committees, or individual members, of Congress or of any legislative body of a State, a possession of the United States, or a political subdivision of any of the foregoing with respect to legislation or proposed legislation of direct interest to the taxpayer, or

    (B) in direct connection with communication of information between the taxpayer and an organization of which he is a member with respect to legislation or proposed legislation of direct interest to the taxpayer and to such organization,

and that portion of the dues so paid or incurred with respect to any organization of which the taxpayer is a member which is attributable to the expenses of the activities described in subparagraphs (A) and (B) carried on by such organization.

(2) LIMITATION.—The provisions of paragraph (1) shall not be construed as allowing the deduction of any amount paid or incurred (whether by way of contribution, gift, or otherwise)—

    (A) for participation in, or intervention in, any political campaign on behalf of any candidate for public office, or

    (B) in connection with any attempt to influence the general public, or segments thereof, with respect to legislative matters, elections, or referendums.

[5]H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 420-421; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 728-729.

organizations. By petitioner's own testimony the Butler County Democratic Party engaged in typical campaign activities, such as posting signs and encouraging people to vote. Petitioner, as an active member of that organization, participated in those activities. In light of the fundamental purpose and traditional activities of State and local political parties, it is beyond question that petitioner's payments were used to fund the party's "attempt to influence the general public, or segments thereof, with respect to legislative matters, elections, or referendums" and the sponsoring of " 'grassroot' campaigns." Sec. 1.162-20(c)(4), Income Tax Regs. Petitioners have presented no evidence of any party activities that do not fall within the scope of the regulatory language. Petitioner's payments were political contributions. The fact that petitioner made the payments in the expectation that they would result in his acquiring and retaining a profitable position through the political influence of the payee does not require a different conclusion. "Expenses incurred in payment to an officeholder's political party are not deductible." *Diggs v. Commissioner*, 715 F.2d at 251.

*Certain Expenditures Inuring to Benefit of a Political Party or Candidate*

Section 276 disallows certain indirect contributions to political parties.

SEC. 276. CERTAIN INDIRECT CONTRIBUTIONS TO POLITICAL PARTIES.

(a) DISALLOWANCE OF DEDUCTIONS.—No deduction otherwise allowable under this chapter shall be allowed for any amount paid or incurred for—

(1) advertising in a convention program of a political party, or in any other publication if any part of the proceeds of such publication directly or indirectly inures (or is intended to inure) to or for the use of a political party or a political candidate,

(2) admission to any dinner or program, if any part of the proceeds of such dinner or program directly or indirectly inures (or is intended to inure) to or for the use of a political party or a political candidate, or

(3) admission to an inaugural ball, inaugural gala, inaugural parade, or inaugural concert, or to any similar event which is identified with a political party or a political candidate.

(b) DEFINITIONS.—For purposes of this section—

(1) POLITICAL PARTY.—The term "political party" means—

(A) a political party;

(B) a National, State, or local committee of a political party; or

(C) a committee, association, or organization, whether incorporated or not, which directly or indirectly accepts contributions (as defined in section 271(b)(2)) or make[s] expenditures (as defined in section 271(b)(3)) for the purpose of influencing or attempting to influence the selection, nomination, or election of any individual to any Federal, State, or local elective public office, or the election of presidential and vice-presidential electors, whether or not such individual or electors are selected, nominated, or elected.

(2) PROCEEDS INURING TO OR FOR THE USE OF POLITICAL CANDIDATES.—Proceeds shall be treated as inuring to or for the use of a political candidate only if—

(A) such proceeds may be used directly or indirectly for the purpose of furthering his candidacy for selection, nomination, or election to any elective public office, and

(B) such proceeds are not received by such candidate in the ordinary course of a trade or business (other than the trade or business of holding elective public office).

The specific transactions which section 276 addresses do not literally include the payments which petitioner made directly to the Butler County Democratic Party. Consequently, section 276 is not strictly applicable. However, allowing petitioner to deduct his payments to the Butler County Democratic Party would be allowing him to do directly what section 276 otherwise prohibits him from doing indirectly.

The legislative history of section 276 demonstrates that its enactment was intended to close the last loophole for allowing deduction of contributions to political organizations as ordinary and necessary business expenses. The Senate report states:

In the case of payments for admissions to dinners or programs held for the purpose of raising funds for a political party or candidate, it appears unlikely that a deduction is available under present law even though the expense is incurred by a business * * *.

Moreover, since direct political contributions are not deductible under present law to individuals not engaged in business, your committee believes that it is undesirable to permit a business to take a trade or business expense deduction with respect to any of these amounts which usually in practice represent ways of making indirect political contributions or costs of participating in political activities.

[S. Rept. 1010, 89th Cong., 2d Sess. (1966), 1966-1 C.B. 476, 504-505.]

Congress obviously did not intend to allow contributions to political organizations to be deductible as business ex-

penses. The language of section 276 and the Senate report demonstrate that Congress believed that *direct* contributions to political organizations were already nondeductible. Congress clearly intended that direct contributions to political organizations remain nondeductible under section 162.[6]

In sum, review of these four categories of nondeductible expenses establishes that whether a payment to a political party was a practical necessity in order to attain or retain a financially lucrative public office is not dispositive of the issue of whether it is a nondeductible "political contribution." The presence of an immediate or future financial benefit does not remove a payment from the realm of nondeductible political contributions.

The foregoing analysis indicates that the historical basis for not allowing section 162 deductions for political contributions and campaign expenses is, to at least a certain extent, based on public policy considerations. See *Nichols v. Commissioner,* 511 F.2d at 620; *Carey v. Commissioner,* 56 T.C. 477, 480-483 (1971), affd. 460 F.2d 1259 (4th Cir. 1972). With respect to public policy, petitioners point out that section 1.162-1(a), Income Tax Regs., states: "A deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162 shall not be denied on the grounds that allowance of such deduction would frustrate a sharply defined public policy." This provision in the regulations contains no specific qualification. However, the quoted provision of the regulations is immediately followed by the citation "See section 162(c), (f), and (g) and the regulations thereunder." Subsections (c), (f), and (g) were enacted in 1969 to specifically disallow certain fines, bribes, kickbacks, and illegal payments that had previously been disallowed on public policy grounds. Tax Reform Act of 1969, Pub. L. 91-172, sec. 902(a) and (b), 83 Stat. 487, 710-711. Those subsections have no bearing on the deductibility of legal political contributions.[7] The legislative history behind the enactment of these

---

[6]See also sec. 271, which generally disallows deductions under either secs. 166 or 165 by reason of the worthlessness of any debt owed to a taxpayer by a political party. It is apparent from the discussion on the Senate floor that this section was introduced to preclude deductions of political contributions which had been disguised as loans. 98 Cong. Rec. 8279 (1952).

[7]Respondent makes no argument that the payments in question were in any way illegal.

subsections indicates that Congress did not intend the enactment of subsections (c), (f), and (g) of section 162 to supplant all consideration of public policy with respect to expenditures related to political activity.[8] Indeed, any other conclusion would disrupt the previously observed legislative scheme and congressional objective of disallowing deductions for political contributions whether they were made directly or indirectly. In light of the aforementioned precedents and the existing statutory scheme, we believe that any deduction for political contributions under section 162 is dependent upon the enactment by Congress of a specific provision allowing such deduction. See *Estate of Rockefeller v. Commissioner*, 83 T.C. 368, 378 (1984), affd. 762 F.2d 264 (2d Cir. 1985); *Carey v. Commissioner*, 56 T.C. at 483. Accordingly, we hold for respondent on this issue.

The next issue for decision is whether petitioners received unreported income of $4,135 during 1984. Respondent's determination is presumed correct and petitioners bear the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111 (1933). Petitioners have presented no evidence to refute respondent's determination. Consequently, we hold for respondent on this issue.

The next issue for decision is whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations for the years 1983 and 1984. Section 6653(a)(1) imposes a 5-percent addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of the rules and regulations. Section 6653(a)(2) provides for a separate addition to tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of the

---

[8]The explanation of these provisions contained in the Senate Finance Committee report, S. Rept. 91-552 (1970), 1969-3 C.B. 423, 597, is as follows:

*Explanation of provision.*—The provision added by the committee amendments denies deductions for four types of expenditures: fines or similar penalties paid to a government for the violation of any law, a portion of treble damage payments under the antitrust laws following a related criminal conviction (or plea of equity or nolo contendere), deductions for bribes paid to public officials (whether or not foreign officials), and other unlawful bribes or "kickbacks." The provision for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, *generally* is not sufficiently clearly defined to justify the disallowance of deductions. *However, this is not, of course, intended to affect the treatment of lobbying expenditures which are already covered by the tax law.* [Emphasis added.]

rules and regulations. For purposes of this section, negligence has been defined as the "failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Neely v. Commissioner,* 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed correct and petitioners bear the burden of proving otherwise. *Hall v. Commissioner,* 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; *Bixby v. Commissioner,* 58 T.C. 757, 791-792 (1972).

With respect to the deficiencies arising from the payments to the Butler County Democratic Party in both the 1983 and 1984 taxable years, we find that those deficiencies were not the result of petitioners' negligence. Respondent did not argue that the payments were not ordinary, and there was ample evidence in the record that a reasonable person could have considered them to be appropriate and helpful as well. The evidence established that it was generally understood that failure to make the payments would result in termination or lapse of an individual's appointment. We have found no cases directly on point with respect to petitioners' situation, and we have rejected respondent's only legal argument based on section 24. Petitioners did not attempt to deduct their political contributions which were not related to bureau receipts. On the basis of the record, we are satisfied that petitioners' underpayments which result from the nondeductibility of their payments to the Butler County Democratic Party were not due to negligence or intentional disregard of the rules and regulations. *Wofford v. Commissioner,* 5 T.C. 1152, 1166-1167 (1945). On the other hand, petitioners failed to present any evidence regarding negligence with respect to the adjustment for unreported income for 1984. Consequently, petitioners have failed to prove that the 1984 deficiency was not due to negligence. Therefore, we sustain respondent's determination of the section 6653(a)(1) addition to tax for 1984. Petitioners are also liable for the section 6653(a)(2) addition to tax with respect to the portion of the 1984 deficiency arising from the unreported income adjustment.

The final issue for decision is whether petitioners are liable for the additions to tax under section 6661 for

substantial understatement of income tax liability for 1984, 1985, and 1986. Section 6661 imposes an addition to tax in an amount equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. *Pallottini v. Commissioner*, 90 T.C. 498 (1988). The amount of the understatement is equal to the excess of the amount of tax required to be shown on the return for the tax year less the amount of the tax shown on the return. *Woods v. Commissioner*, 91 T.C. 88, 94 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6661(b)(1). The deficiencies that we uphold for 1984, 1985, and 1986, qualify as substantial understatements as defined in section 6661(b). There is no substantial authority that supports petitioners' position. See sec. 6661(b)(2)(B). Therefore, petitioners are liable for the section 6661 addition to tax unless some or all of the addition to tax should have been waived by respondent.[9]

Congress made respondent's waiver a discretionary act. We should give due deference to respondent's discretion. We have held, however, that this Court has the authority to review respondent's failure to grant a waiver pursuant to section 6661(c). The appropriate standard of review is whether respondent has abused his discretion. *Mailman v. Commissioner*, 91 T.C. 1079, 1083 (1988).

The sum total of respondent's arguments for disallowance of deductions for amounts paid by petitioner to the Butler County Democratic Party is that (1) the payments were not required in order to obtain and retain petitioner's position as deputy registrar, and (2) that political contributions are always nondeductible. Respondent's legal argument for nondeductibility of political contributions was based solely on his analysis of section 24. Both positions have been found to be without merit. Had petitioners been presented with respondent's arguments at the time of making the returns in issue, they would have been reasonable in rejecting them. Determining the deductibility of expendi-

---

[9]Sec. 6661(c) provides:

SEC. 6661(c). AUTHORITY TO WAIVE.—The Secretary may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith.

tures of this nature has historically proven to be a difficult task. See *Nichols v. Commissioner, supra; Estate of Rockefeller v. Commissioner, supra; Carey v. Commissioner, supra.* We have found no cases that are on all fours with the instant case. Respondent's briefs cite only one case, *Brizell v. Commissioner,* 93 T.C. 151 (1989), in support of his position. *Brizell* has been of no assistance in resolving the principal issue presented in the instant case. We conclude that respondent abused his discretion in refusing to waive the addition to tax under section 6661. Accordingly, petitioners are not liable for such addition.

*Decisions will be entered under Rule 155.*