T.C. Memo. 2018-190

UNITED STATES TAX COURT

DANN LEE DUNCAN AND KATHRINE GAY DUNCAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26727-13.                    Filed November 13, 2018.

Dann Lee Duncan and Kathrine Gay Duncan, pro sese.

<u>Cassidy B. Collins</u>, <u>Andrea M. Faldermeyer</u>, and <u>Katherine H. Ankeny</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Respondent determined a deficiency of $26,716 in petitioners' Federal income tax and an accuracy-related penalty pursuant to section

[*2] 6662(a) of $5,343 for the 2008 taxable year.[1]  After concessions by respondent the issues remaining for decision are:  (1) whether respondent timely mailed a notice of deficiency to petitioners, (2) whether petitioners failed to report gross receipts of $30,000 on their Schedule C, Profit or Loss From Business, and (3) whether petitioners have substantiated Schedule C deductions in amounts greater than respondent allowed.  We resolve these issues in favor of respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioners resided in California at the time they filed their petition with the Court.

Mr. Duncan (petitioner) is a self-employed attorney who specializes in workers' compensation cases for police and fire officials.  Petitioner is himself a retired police officer.  Mrs. Duncan is employed as a corporate services officer for a bank.  All of the adjustments in respondent's determination pertain to petitioner's Schedule C attached to petitioners' joint Form 1040, U.S. Individual Income Tax Return, for 2008 (joint return).  Petitioners timely filed the joint return

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Some monetary amounts are rounded to the nearest dollar.

[*3] on which they reported wage income from Mrs. Duncan's employment and claimed a Schedule C business loss deduction for petitioner's legal practice.[2]

I.    Check From Mr. Walker

Petitioner successfully represented Keith Walker, a former police officer who was injured in the line of duty, in a lawsuit against the city of Huntington Park, California, his former employer, and CalPERS, the California State pension fund.  Petitioner represented Mr. Walker from the commencement of the suit in 1994 through its conclusion in 2008, and Mr. Walker received a lump-sum payment exceeding $360,000 consisting of accrued pension benefits.  Petitioner received a $2,500 "flat fee" paid by Mr. Walker at the outset of the lawsuit in 1994.  After the lawsuit concluded petitioner received a check for $30,000 from Mr. Walker, which he deposited into his personal checking account on November 10, 2008.  Petitioners did not report the $30,000 on the joint return.  Petitioner contends that the $30,000 was a nontaxable gift.  Although Mr. Walker considered petitioner more than just his attorney but also a friend, he would not have given $30,000 to petitioner if he had not received the lump-sum payment.

---

[2]On his Schedule C petitioner reported gross receipts of $6,530 and expenses totaling $43,021 (including home office expenses of $3,423).

**[*4]** At trial petitioners did not produce a fee agreement or any other documentation regarding petitioner's representation of Mr. Walker.

Mr. Walker prepared his own Federal income tax return for 2008, deducting the $30,000 payment to petitioner as a legal expense, and he did not file a Federal gift tax return for that year.

II.    Yacht Event

In March 2008 petitioner underwent significant brain surgery, from which he would spend much of the next year recovering. Before the surgery he held an event to which he invited his current clients, renting a yacht for the occasion and providing a catered dinner, drinks, and entertainment, for the purpose of discussing with the clients the status of their cases, his upcoming surgery, and his expected availability following the surgery. Petitioner did not advertise but met all of his clients through word of mouth; petitioner gained new clients by treating his current clients better than most other attorneys might treat them.

The total cost for the event (as indicated by a rental estimate from the yacht rental company that petitioner provided) was $8,284 consisting of $4,076 for yacht rental and related expenses, $3,200 for catering and entertainment, and $1,008 for a service charge and sales tax. On his Schedule C petitioner claimed $4,421 as an advertising expense deduction for the yacht event.

**[*5]** In the notice of deficiency[3] respondent disallowed petitioner's claimed advertising expense deduction for the yacht event but allowed a deduction of 50% (pursuant to the section 274(n) limitation) for the portion of the event cost relating to meals and entertainment. In calculating this amount respondent excluded "linens" of $180 from the catering and entertainment expenses listed on the rental estimate, resulting in respondent allowing 50% of $3,020, or $1,510, as deductible meals and entertainment expenses.[4]

Petitioner provided credit card statements establishing that he paid $3,821 to the yacht rental company in March 2008 before the event and received a $100 refund thereafter for an unspecified reason. In allowing petitioner to deduct 50% of $3,020 for meals and entertainment expenses, respondent treated the $3,821 payment as a meals and entertainment expense.[5]

---

[3]Duplicate notices of deficiency were addressed to petitioners--one to petitioner at a Knoxville, Tennessee, address and another to Mrs. Duncan at a West Covina, California, address.

[4]Petitioner also reported on his 2008 Schedule C, and respondent allowed, an additional $85 in meals and entertainment expenses, for a total allowed deduction of $1,595.

[5]Respondent treated the remaining portion of the $3,821 payment ($801) as nondeductible facility fees. See sec. 274(a)(1)(B); sec. 1.274-2(a)(2), (e)(2), Income Tax Regs.

[*6] III.     Payments to Ms. Gu

Throughout 2008, but particularly following his surgery, petitioner was assisted in his legal practice by Mei Gu, who helped with clerical tasks such as mail processing and bookkeeping.  Ms. Gu was a personal friend of petitioner.[6]

On his Schedule C petitioner deducted $23,510 as a contract labor expense. During the examination of the joint return petitioner agreed that he had not properly characterized the payments to Ms. Gu, and he instead contended that they were deductible as "other expenses".  In the notice of deficiency respondent disallowed petitioner's deduction for contract labor expenses and did not allow any corresponding increase in petitioner's deduction as reflected on his Schedule C for other expenses.

IV.   Other Schedule C Expenses

Petitioner also reported, and respondent disallowed deductions for, $4,429 in car and truck expenses and $2,471 in depreciation on his Schedule C.  Petitioner did not include any additional information regarding the reported car and truck expenses in the section of his Schedule C designated for such information (e.g.,

---

[6]Petitioner also noted at trial and in correspondence with respondent that Ms. Gu has incorporated a Nevada limited liability company through which she renders services, but all of the checks entered into evidence seemingly were made out to her personally.  Regardless, to whom petitioner actually paid the expenses does not affect their deductibility to him.

[*7] the date when the claimed vehicle(s) were placed in service for business

purposes or mileage traveled for business purposes) and did not otherwise identify

the vehicle(s) for which he was reporting the expenses anywhere else on the joint

return. The joint return indicated that the reported depreciation also pertained to

the unidentified vehicle(s).

Petitioner provided credit card statements reflecting numerous vehicle-

related expenses (primarily charges at gas stations and automotive shops), but he

did not provide evidence to show for which vehicle(s) those expenses were

incurred.[7]

Petitioner also reported, and respondent disallowed a deduction for, a $740

bad debt loss as an "other expense" on his Schedule C.[8] He contends that the loss

---

[7]Petitioners attached to the joint return a Schedule A, Itemized Deductions. On this Schedule A petitioners claimed, and respondent allowed, a deduction of $13,784 (before application of the 2% floor imposed by sec. 67(a)) for Mrs. Duncan's unreimbursed employee expenses. The bulk of these expenses ($10,258) was attributable to Mrs. Duncan's work-related use of two vehicles that petitioners owned--a GMC Yukon and a Toyota Camry, the former of which they sold during 2008, recognizing capital gain.

[8]On his Schedule C petitioner also claimed a deduction for the following expenses totaling $7,365: legal and professional services, office expenses, repairs and maintenance, taxes and licenses, bank charges, court filing fees, delivery and freight, dues and subscriptions, internet access, janitorial, laundry and cleaning, parking and tolls, post office box rental, postage, State bar dues, telephone, and workers' compensation "central". Respondent allowed all of these as deductible

(continued...)

[*8] related to a $750 loan made to an estranged niece and that after she made one payment of $60 he never heard from her again.[9]

V.    Examination of the Joint Return

Respondent selected the joint return for examination and requested that petitioners provide documentation to support the reported Schedule C expenses and certain other items on the joint return.  During the examination petitioners executed two Forms 872, Consent to Extend the Time to Assess Tax.[10]  The first Form 872 was signed by petitioners during December 2011 and by respondent's representative on January 6, 2012, extending the time for respondent to assess tax for 2008 until April 15, 2013.  The second Form 872 was signed by petitioners during November 2012 and by respondent's representative on November 26, 2012, extending the time for respondent to assess tax for 2008 until December 31, 2013.

---

[8](...continued)
expenses and does not challenge their deductibility here.

[9]On brief petitioners concede that if allowed, their deduction from this loss should be only $690.

[10]Because petitioners timely filed the joint return, if they had not granted such consents, the three year statutory period of limitations on assessment of tax for 2008 would have expired on April 15, 2012.  See sec. 6501(a) and the discussion infra pp. 9-13.

**[\*9]** Respondent issued duplicate notices of deficiency to petitioners on August 22, 2013. On November 13, 2013, petitioners timely filed their petition with the Court.

OPINION

I. Statutory Period of Limitations To Assess Tax

As a preliminary matter we address petitioners' argument that respondent issued the duplicate notices of deficiency after the statutory period of limitations to assess tax had expired and that thus respondent is barred from assessing any income tax deficiency for 2008.

Section 6213(a) generally requires the Commissioner to issue a notice of deficiency before assessing a deficiency in Federal income tax against a taxpayer. When a taxpayer has filed a return, section 6501(a) generally requires the Commissioner to assess a deficiency in Federal income tax within three years after the return was filed. Hence, under these general rules, the Commissioner may issue a notice of deficiency to a taxpayer only within the same period.

Section 6501(c)(4) authorizes a taxpayer and the Commissioner to agree in writing to extend the period of limitations on assessment and thereby extend the period in which the Commissioner may issue a notice of deficiency. An agreement reached under this section is not a contract (rather, it is a unilateral

[*10] waiver of a defense by the taxpayer), but contract principles are useful in interpreting such agreements and, in particular, ensuring that such agreements reflect a "manifestation of mutual assent." Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983) (first citing Stange v. United States, 282 U.S. 270 (1931); then citing Tallal v. Commissioner, 77 T.C. 1291 (1981)).

Just as an agreement to extend the period of limitations on assessment must be made in writing, any condition, limitation, or modification of such an agreement must also be made in writing, either directly in the agreement or in a separate but contemporaneous document. See Schulman v. Commissioner, 93 T.C. 623, 639-642 (1989) (and cases cited threat). When the Commissioner produces a written agreement extending the period of limitations on assessment that appears valid and unrestricted on its face, the taxpayer bears the burden of proving otherwise, i.e., the taxpayer must show that the agreement is invalid or, if contending that the agreement was restricted, that the claimed restriction was reduced to writing. Kronish v. Commissioner, 90 T.C. 684, 692-693 (1988); see also Crown Willamette Paper Co. v. McLaughlin, 81 F.2d 365, 367 (9th Cir. 1936).

Respondent produced two consent forms (Forms 872) with respect to petitioners' 2008 taxable year. The first consent form extended the period of

[*11] limitations on assessment to April 15, 2013. The second consent form, executed before the expiration of the previously extended date of April 15, 2013, further extended the period of limitations on assessment to December 31, 2013. Petitioners do not dispute that they signed the forms. Petitioners argue, however, that the consent forms are invalid because they were coerced by respondent into signing them and because respondent thereafter ignored certain agreed restrictions on which their consents were premised.

We find petitioners' arguments unpersuasive. Petitioners' coercion claim is founded on respondent's warning that failure to extend the period of limitations on assessment would result in the issuance of a notice of deficiency on the basis of information obtained thus far during the examination. In cases involving similar factual situations this Court has consistently held that it is not coercion on the Commissioner's part merely to describe the "lawful means provided by the statute to assess and collect the tax" if the taxpayer declines to sign a consent to extend the period of limitations on assessment. Mulford v. Commissioner, 25 B.T.A. 238, 242-243 (1932) (citing Burnet v. Chi. Ry. Equip. Co., 282 U.S. 295 (1931)), aff'd, 66 F.2d 296 (3d Cir. 1933); see Shireman v. Commissioner, T.C. Memo. 2004-155; Ballard v. Commissioner, T.C. Memo. 1987-471, aff'd, 851 F.2d 359 (5th Cir. 1988); Price v. Commissioner, T.C. Memo. 1981-693, aff'd without published

**[*12]** <u>opinion</u>, 742 F.2d 1460 (7th Cir. 1984).  <u>But cf.</u> <u>Diescher v. Commissioner</u>, 18 B.T.A. 353 (1929) (holding that a threat to assert unjustified fraud penalties unless taxpayer signed consent did constitute duress invalidating agreement).  We see no distinction between those cases and this one and have no reason to reach a different conclusion.[11]  Far from being coercive, respondent was actually explaining to petitioners why extending the period of limitations on assessment generally works in a taxpayer's favor, allowing the Commissioner more time to examine the taxpayer's returns and allowing the taxpayer more time to provide documents in support of his case and potentially reach an amicable conclusion.

Petitioners also contend that their written consents were conditioned on having the Internal Revenue Service (IRS) revenue agent handling their

---

[11]Petitioners rely primarily on <u>Nat'l Fed'n of Indep. Bus. v. Sebelius</u>, 567 U.S. 519, 577-578 (2012) (quoting <u>Steward Mach. Co. v. Davis</u>, 301 U.S. 548, 590 (1937)), in which the U.S. Supreme Court held that Congress could not use "financial inducements" to "exert a 'power akin to undue influence'" and "coerce" State governments into taking certain actions.  This case is wholly inapposite, not just because petitioners are not a State government and respondent is not Congress, but because respondent was fully within his statutory authority to issue a notice of deficiency to petitioners reflecting the amount of tax for which respondent believed petitioners were liable at any time during the examination. That is, the record does not reflect--and petitioners do not allege--that respondent threatened to impose any additional tax or penalties on petitioners beyond that for which they were already liable (as we held impermissible in <u>Diescher v. Commissioner</u>, 18 B.T.A. 353 (1929)), and thus there was no financial pressure on petitioners (indeed, as discussed in the text, extending the period of limitations on assessment for 2008 was actually in their interest).

**[\*13]** examination removed from the examination and getting an opportunity to

challenge respondent's findings from the examination before the IRS Office of

Appeals. Petitioners' argument concludes that respondent did not comply with

either condition, thus invalidating their consents.

On the basis of our review of the consent forms we find that they do not

reflect a written amendment or modification manifesting the conditions petitioners

advance. Petitioners did not present any evidence to the contrary at trial.[12]

Consequently, we hold that both consent forms were valid and unrestricted and

that therefore the duplicate notices of deficiency, having been issued before the

expiration of the second consent form, were timely.

II.     Burden of Proof

In general, the Commissioner's determinations set forth in a notice of

deficiency are presumed correct, and the taxpayer bears the burden of proving

otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). For

this presumption to adhere in cases (such as this one) involving unreported

---

[12]Petitioner's oral statement that respondent agreed to such conditions was not made under oath and was merely petitioner's argument at trial. Even if petitioner had made his statement under oath, "[a]s we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)).

[*14] income, the Commissioner must provide some reasonable foundation connecting the taxpayer with the income-producing activity. See Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). Once the Commissioner has done this, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935).

It is undisputed that during 2008 petitioner was a licensed and practicing attorney, and he reported that income-producing activity on a Schedule C. It is also undisputed that petitioner received and deposited into his personal checking account a $30,000 check from Mr. Walker, who petitioner had represented in a lawsuit. Respondent also produced a copy of the deposited check. On the basis of this credible and undisputed evidence, we are satisfied that respondent has proved a likely source of the unreported income. Thus, as to the unreported income, the burden of proof shifts to petitioner to show that respondent's determination in this regard was arbitrary or erroneous.[13]

---

[13]Petitioners do not otherwise contend that the burden of proof should shift to respondent under sec. 7491(a), nor have they established that the requirements for shifting the burden of proof have been met. Accordingly, the burden of proof remains on petitioners.

**[*15]** III.     Business Income Adjustment

A taxpayer's gross income includes "all income from whatever source derived," including "[c]ompensation for services" and "[g]ross income derived from business". Sec. 61(a)(1) and (2). However, gross income does not include "the value of property acquired by gift". Sec. 102(a).

The U.S. Supreme Court addressed the meaning of "gift" (for purposes of section 22(b)(3) of the Internal Revenue Code of 1939, a predecessor to section 102) in Commissioner v. Duberstein, 363 U.S. 278, 285-286 (1960) (fn. ref. omitted), as follows:

> [T]he statute does not use the term "gift" in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntarily executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a "gift" within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730 [(1929)]. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from "the incentive of anticipated benefit" of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41 [(1937)], it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." Robertson v. United States, 343 U.S. 711, 714 [(1952)]. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246 [(1956)]; "out of affection, respect, admiration, charity or like impulses." Robertson v. United States, supra, at 714. And in this

**[*16]** regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." Bogardus v. Commissioner, 302 U.S. 34, 41. * * *

Because intent is the "most critical consideration", id. at 285, determining whether a transfer of property is a gift is a highly factual inquiry "that must be reached on consideration of all the factors", id. at 288; see Woody v. United States, 368 F.2d 668, 670-671 (9th Cir. 1966). This inquiry focuses upon objective indicia of the transferor's intent from the whole evidentiary record and does not merely rely on the transferor's own statements. To this end, the Supreme Court in Commissioner v. Duberstein, 363 U.S. at 286, stated:

> The Government says that this "intention" of the transferor cannot mean what the cases on the common-law concept of gift call "donative intent." With that we are in agreement, for our decisions fully support this. Moreover, the Bogardus case itself makes it plain that the donor's characterization of his action is not determinative-- that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S., at 40. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.
>
> We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact-- the dominant reason that explains his action in making the transfer. * * *

Accordingly, once we establish as a factual matter the dominant reason for the transfer, determining whether that reason justifies nontaxable treatment under

[*17] section 102 is a legal question. Olk v. United States, 536 F.2d 876, 878-879 (9th Cir. 1976); see also Plotinsky v. Commissioner, T.C. Memo. 2008-244, slip op. at 11-17 (analyzing and applying Duberstein).

Duberstein draws an important distinction--a gift made out of generosity or charity is not taxable under section 102, but one made out of gratitude, particularly gratitude stemming from a prior economic or commercial relationship, is taxable. See Commissioner v. Duberstein, 363 U.S. at 287. In that case Mr. Duberstein was a businessman who maintained a cordial relationship with one of his suppliers, Mr. Berman, from whom he made regular purchases and to whom he provided leads for new customers. Id. at 280. Mr. Duberstein never asked for or received compensation for the leads, but after several years Mr. Berman felt inclined to give him something in return for his assistance. Id. He bought Mr. Duberstein a brand new Cadillac; and although Mr. Duberstein initially protested, he eventually accepted the car. Id. at 280-281. The Supreme Court noted that Mr. Berman's company apparently deducted the cost of the car as a business expense on its Federal corporate income tax return. The Supreme Court also noted that Mr. Duberstein testified that, although he regarded the car as a nontaxable gift, he had no reason to think Mr. Berman would have given it to him had he not provided him with the leads. Id. at 281. Ultimately, the Supreme Court upheld this Court's

[*18] ruling, Duberstein v. Commissioner, T.C. Memo. 1958-4 (and reversed the ruling of the U.S. Court of Appeals for the Sixth Circuit, 265 F.2d 28 (6th Cir. 1959)), holding that the car was taxable income to Mr. Duberstein. The Supreme Court stated:

> It seems to us plain that as trier of the facts * * * [the Tax Court] was warranted in concluding that despite the characterization of the transfer of the Cadillac by the parties and the absence of any obligation, even of a moral nature, to make it, it was at bottom a recompense for Duberstein's past services, or an inducement for him to be of further service in the future. * * *

Commissioner v. Duberstein, 363 U.S. at 291-292.

Both parties rely on Duberstein for their characterization of the check petitioner received from Mr. Walker. Petitioners argue that Mr. Walker gave petitioner $30,000 out of disinterested generosity resulting from a personal relationship to which petitioner's representation of Mr. Walker in his lawsuit against the city of Huntington Park, California, and CalPERS was incidental. Respondent argues the converse--that even if petitioner and Mr. Walker developed a personal relationship over time, their primary relationship was that of lawyer and client, and Mr. Walker gave petitioner $30,000 out of his proceeds (exceeding $360,000) from the lawsuit as compensation for that relationship.

**[\*19]** Petitioners argue that there was no binding contract or legal obligation requiring Mr. Walker to make the payment, while respondent argues that Mr. Walker's deduction of the payment as a legal expense on his own Federal tax return better demonstrates his intent. It is noted that in Duberstein (and subsequent cases) the existence of a personal relationship between a donor and a donee, the lack of moral or legal obligation on the donor to make a payment, and the donor's tax treatment of the payment, each standing alone, were all deemed irrelevant or subordinate considerations. Instead, the characterization of a transfer depends on the fact-finder's perception in the light of all the evidence. After weighing the evidence in the record, including Mr. Walker's testimony, we hold that Mr. Walker gave $30,000 to petitioner primarily out of gratitude for petitioner's services in representing him and bringing the lawsuit to a successful conclusion after 14 years. We find most persuasive as clear indications that Mr. Walker was not making a gift to petitioner the facts that (1) he would not have given $30,000 to petitioner but for his receipt of the lump-sum payment exceeding $360,000 from the lawsuit and (2) he deducted the $30,000 on his Federal income tax return.

The facts in this case in many ways mimic the facts of Duberstein--even though petitioner did not solicit it, the payment from Mr. Walker appears intended

**[\*20]** as compensation for a job well done (akin to a tip or gratuity for exceptional services rendered) and much more directly so than in many cases in which we have similarly held.  Cf. Olk, 536 F.2d 876 (holding that small gratuities given by gamblers to casino employees, though largely driven by superstition, were nonetheless connected to services rendered and thus taxable income).

We sustain respondent's determination that petitioner had additional business income for 2008 of $30,000.

IV.    Business Expense Deduction Adjustments

Business expense deductions, like all tax deductions, are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to any deduction.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability.  Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

Section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec.

**[*21]** 162(a); sec. 1.162-1(a), Income Tax Regs. An expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (quoting Welch v. Helvering, 290 U.S. at 113). In contrast a taxpayer may not deduct a personal, living, or family expense unless the Internal Revenue Code expressly provides otherwise. Sec. 262(a). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. Cloud v. Commissioner, 97 T.C. 613, 618 (1991) (citing Commissioner v. Heininger, 320 U.S. 467, 473-475 (1943)).

Petitioners contend that they are entitled to deduct the payments petitioner made to Ms. Gu as ordinary and necessary business expenses. They do not contend, however, that the payments were for services that Ms. Gu performed. Moreover, petitioners were unable to categorize these expenses or substantiate them with documents other than the checks produced. Although some of the amounts paid to Ms. Gu may have represented business expenses, petitioner has failed to keep adequate books and records or to present other evidence to

[*22] substantiate these expenses. Consequently, we sustain respondent's disallowance of this deduction in full.

For certain business expenses, Congress explicitly requires a higher (i.e., stricter) level of substantiation. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985) (flush language). Such expenses are those specified in section 274, such as travel (including meals and lodging), entertainment, and "listed property" (including passenger automobile) expenses.[14] Secs. 274(d), 280F(d)(4)(A)(i); sec. 1.274-5T(a), Temporary Income Tax Regs., supra; see Boyd v. Commissioner, 122 T.C. 305, 320 (2004). These strict substantiation rules generally require the taxpayer to substantiate with adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment expense, the business relationship between the person entertained and the taxpayer. Balyan v. Commissioner, T.C. Memo.

---

[14]A taxpayer may deduct passenger vehicle expenses by using either actual cost or the standard mileage rate, provided he substantiates the amount of business mileage and the time and purpose of each use. See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2007-70, 2007-50 I.R.B. 1162; Announcement 2008-63, 2008-28 I.R.B. 114.

**[*23]** 2017-140, at *7; sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  For "listed property" expenses, in addition to the time such expenses were incurred and their business purpose, the taxpayer must establish the amount of business use and the total use of such property.  Balyan v. Commissioner, at *7-*8; sec. 1.274-5T(b)(6)(i)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain (1) an account book, diary, log, statement of expense, trip sheets, or similar record prepared contemporaneously with the expenditure and (2) documentary evidence, such as receipts or paid bills, which together prove each element of an expenditure.  Balyan v. Commissioner, at *8; sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Although taxpayers may "fill in" the gaps in their records with oral testimony, that testimony alone, regardless of its specificity, is not sufficient to satisfy the section 274(d) strict substantiation rules; there must be other corroborative evidence.  Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  In addition to the section 274(d) strict substantiation rules, meal and entertainment expenses are subject to a further

**[*24]** limitation:  A taxpayer may deduct only 50% of the applicable expenses claimed.  Sec. 274(n)(1).

Petitioners contend that they are entitled to deduct the cost of the yacht event as an advertising expense because it engendered positive feelings among petitioner's clients and, because his main method of attracting new clients is through word of mouth, this would help him obtain new clients.  Although it appears to be less likely that such an event would attract new clients, it did benefit his current clients.  Either way, it was related to his clients and business and thus is deductible as an ordinary and necessary business expense for meals and entertainment, subject to the applicable restrictions for such expenses.  Petitioners substantiated, to respondent's satisfaction, the amount, time, place, and business purpose of the event pursuant to section 274(d), and that the expense was at least $3,020.  Respondent allowed a deduction of $1,510 in accord with the statute. Petitioners have not shown that they are entitled to an amount in excess of respondent's allowance.  Petitioners contend that the yacht rental exceeded $8,000 but have only provided proof of payment of less than $4,000, which was addressed in respondent's allowance.  We accordingly hold that respondent's determination with respect to this item is not in error.

**[*25]** Petitioners contend that they are entitled to deduct $4,421 in car and truck expenses and an additional $2,471 in depreciation related to unspecified vehicle(s). Petitioners, however, did not provide sufficient substantiation to support their car and truck expenses. We note that they failed to identify the vehicle(s) for which they claim to have incurred these expenses, and as a result it is not even clear to us that petitioners did not already deduct those expenses as Mrs. Duncan's unreimbursed employee expenses on their Schedule A. Consequently, we sustain respondent's disallowance of these deductions in full.

Section 166(a)(1) allows a taxpayer to deduct any debt that becomes wholly worthless within the taxable year. Section 166(a)(1) does not, however, apply to a nonbusiness debt held by a taxpayer other than a corporation; instead, the taxpayer is allowed a short-term capital loss for the taxable year in which the debt becomes worthless. Secs. 166(d)(1), 1211(b); sec. 1.166-5(a)(2), Income Tax Regs. Only a bona fide debt qualifies for purposes of section 166; bona fide debt is a debt that arises from "a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Kean v. Commissioner, 91 T.C. 575, 594 (1988); Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); sec. 1.166-1(c), Income Tax Regs. A gift is not considered a "debt" for purposes of section 166. Sec. 1.166-1(c), Income Tax Regs. Accordingly, the

[*26] taxpayer must establish both the existence of a bona fide debt, <u>Clark v. Commissioner</u>, 18 T.C. 780, 783 (1952), <u>aff'd per curiam</u>, 205 F.2d 353 (2d Cir. 1953), and that the debt became worthless during the taxable year for which a short-term capital loss is claimed, <u>Dustin v. Commissioner</u>, 53 T.C. 491, 501-502 (1969), <u>aff'd</u>, 467 F.2d 47 (9th Cir. 1972).

Petitioners claim that they are entitled to deduct $690 for a bad debt loss on a loan to a distant relative who failed to make more than one payment on the debt as agreed. However, petitioners have not established the existence of a bona fide debt in any way other than through petitioner's "self-serving" testimony, <u>see</u> <u>Shea v. Commissioner</u>, 112 T.C. 183, 189 (1999) (citing <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986)),[15] nor have they established that the debt became worthless during 2008. Accordingly, we sustain respondent's disallowance of this deduction in full and further find that petitioners are not allowed a short-term capital loss deduction for the claimed bad debt loss.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

_____

[15]We also note that on the basis of the facts and circumstances, the purported debt is a nonbusiness debt within the meaning of sec. 166(d)(2).

[*27] To reflect the foregoing and respondent's concessions,

Decision will be entered under

Rule 155.
