# United States Tax Court

T.C. Memo. 2024-14

PAULETTE THOMPSON AND JOHNNIE L. THOMPSON,[1]
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

PAULETTE THOMPSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 9336-18, 12968-18.                    Filed February 5, 2024.

————

Paulette Thompson and Johnnie L. Thompson, pro se in Docket No. 9336-18.

Paulette Thompson, pro se in Docket No. 12968-18.

*G. Chad Barton*, *Jamie M. Powers*, and *Vassiliki Economides Farrior*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: These cases arise from two notices of deficiency dated January 10 and April 4, 2018, respectively, in which the Internal Revenue Service (IRS or respondent) determined a deficiency in

---

[1] We consolidated the cases at Docket Nos. 9336-18 and 12968-18 for trial, briefing, and opinion.

[*2] Paulette Thompson and Johnnie L. Thompson's joint federal income tax for tax year 2011 and a deficiency in Mrs. Thompson's individual federal income tax for tax years 2014, 2015, and 2016. Respondent's determinations of deficiencies, additions to tax, and penalties are as follows:

| Year | Deficiency | Penalty/Additions to Tax[2] | | | |
|------|-----------|-----------|-----------|-----------|-----------|
| | | I.R.C. § 6662(a) | I.R.C. § 6651(a)(1) | I.R.C. § 6651(a)(2) | I.R.C. § 6654 |
| 2011 | $32,577 | $6,515 | $7,955 | – | – |
| 2014 | 259,858 | – | 58,468 | To be determined | – |
| 2015 | 213,404 | – | 48,016 | To be determined | $3,843 |
| 2016 | 167,453 | – | 22,606 | To be determined | 4,003 |

---

[2] The section 6651(a)(2) amounts due from Mrs. Thompson will be calculated according to Rule 155 computations. Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] After concessions,[3] the issues for decision are as follows:

1.  Whether petitioners had unreported cancellation of debt income of $2,064 for tax year 2011.

2.  Whether Mrs. Thompson had unreported gross receipts from Schedules C, Profit or Loss From Business, of $60,950, $58,739, and $57,667 relating to her tax preparation business during tax years 2014, 2015, and 2016, respectively.

3.  Whether Mrs. Thompson had unreported income from farming activities during tax years 2014, 2015, and 2016.

4.  Whether Mrs. Thompson had unreported cooperative distribution income from Schedules F of $11,739, $9,348, and $7,439 during tax years 2014, 2015, and 2016, respectively.

5.  Whether Mrs. Thompson had unreported taxable interest income of $1,241, $2,570, and $1,196 during tax years 2014, 2015, and 2016, respectively.

6.  Whether Mrs. Thompson had unreported Schedule F agricultural program payments of $58,287 during tax year 2014.

7.  Whether petitioners' Schedule F expense deductions related to insurance (other than health), chicken feed, and contract labor for tax year 2011 should be disallowed.

8.  Whether Mrs. Thompson is entitled to deduct Schedule F expenses related to contract labor, in excess of the amounts respondent conceded, for tax years 2014, 2015, and 2016.

---

[3] In the case at Docket No. 9336-18 respondent concedes that petitioners did not underreport their income from Schedule F, Profit or Loss From Farming, of $36,646 and that they are not liable for an accuracy-related penalty under section 6662 for tax year 2011. In the case at Docket No. 12968-18 respondent concedes that except for contract labor, Mrs. Thompson is entitled to deduct certain Schedule F expenses reported on the tax returns submitted for tax years 2014, 2015, and 2016. Moreover, respondent concedes that Mrs. Thompson had a loss carryover from Schedule D, Capital Gains and Losses, available to apply for tax year 2014, with the remaining carryover available to be applied for tax years 2015 and 2016. Lastly, respondent concedes that Mrs. Thompson did not have unreported Schedule F agricultural program payment income of $101,566 for tax year 2016.

**[*4]** 9.    Whether petitioners are liable for an addition to tax under section 6651(a)(1) for tax year 2011.

10.    Whether Mrs. Thompson is liable for additions to tax under section 6651(a)(1) for tax years 2014, 2015, and 2016.

11.    Whether Mrs. Thompson is liable for additions to tax under section 6651(a)(2) for tax years 2014, 2015, and 2016.

12.    Whether Mrs. Thompson is liable for additions to tax under section 6654 for tax years 2015 and 2016.[4]

## FINDINGS OF FACT

These cases were tried during the Court's Little Rock, Arkansas, trial session. The parties filed a First Stipulation of Facts with accompanying Exhibits, which is incorporated herein by this reference. Some facts have been stipulated and are so found. When the Petitions in these consolidated cases were timely filed, Mr. and Mrs. Thompson, collectively petitioners, resided in Arkansas.

Petitioners are married and have three adult children. During 2011 petitioners earned income from farming operations consisting of raising and selling cattle, chickens, eggs, and turkeys. During 2014, 2015, and 2016 Mrs. Thompson earned income from these same farming operations, excluding the raising and selling of turkeys, as well as income from her tax preparation business. Mrs. Thompson provided tax preparation services under the name Thompson Accounting & Tax Services.

Petitioners' joint income tax return for tax year 2011 was due on April 15, 2012. They filed a delinquent return on April 13, 2015. Petitioners included Schedule F and Form 4797, Sales of Business Property. On Form 4797 petitioners reported gain of $27,433 from the sale of cattle. Petitioners received cancellation of indebtedness income of $2,064 from a Capital One credit card debt, as reported on Form 1099–C, Cancellation of Debt.

Petitioners originally reported Schedule F expenses for insurance (other than health) of $12,290, feed expenses of $14,672, and contract labor of $180,154 for tax year 2011. Respondent determined that

---

[4] The notice of deficiency for years 2014, 2015, and 2016 also included adjustments to self-employment tax, Social Security tax, and Medicare tax, which are computational.

[*5] petitioners were entitled to deduct Schedule F expenses for insurance (other than health) of $10,289, feed expenses of $6,789, and contract labor expenses of $105,880. Accordingly, respondent adjusted petitioners' 2011 joint return, including adjustments to their Schedule F, as follows:

| 2011 Schedule F Expenses | Amount Disallowed |
| --- | --- |
| Insurance (other than health) | $2,001 |
| Feed Expenses | 7,883 |
| Other Expenses – Contract Labor | 74,274 |

On Schedule F petitioners reported the following income from the sale of livestock:

| 2011 Schedule F Income | Amount |
| --- | --- |
| Cattle Sales | $146,736 |
| Simmons – Chicken/Egg Income | 242,374 |
| Cargill – Turkey Income | 105,000 |
| Less: Cattle Sales Allocated to Form 4797 | (27,433) |
| Total Sales – Raised Livestock Reported on Schedule F, line 2(b) | $466,677 |

Mrs. Thompson failed to timely file income tax returns for tax years 2014, 2015, and 2016.[5] On January 5, 2018, respondent prepared substitutes for returns (SFRs) for Mrs. Thompson, pursuant to section 6020(b), for tax years 2014, 2015, and 2016.

On April 16, 2018, following respondent's preparation of the SFRs, Mrs. Thompson mailed a delinquent joint tax return to IRS Examination for tax year 2014. Respondent did not process this return. The delinquent 2014 tax return claimed joint filing status with her husband and included Schedule F and Form 4797. On Form 4797 Mrs. Thompson reported a gain from cattle sales of $47,330 on Part I and an ordinary gain from cattle sales of $9,898 on Part II. On Schedule F Mrs. Thompson claimed a deduction of $218,400 for Contract Labor and income of $55,163 from her tax preparation business as "Custom Hire

[5] Mrs. Thompson's income tax return for tax year 2014 was due April 15, 2015. Mrs. Thompson's income tax return for tax year 2015 was due April 15, 2016. Mrs. Thompson's income tax return for tax year 2016 was due October 15, 2017, following an extension.

[*6] (Machine Work) Income." On Schedule F Mrs. Thompson also reported the following income from sales of livestock:

| 2014 Schedule F Income | Amount |
|---|---|
| Cattle Sales | $251,145 |
| Simmons – Chicken/Egg Income | 251,532 |
| Less: Cattle Sales on Schedule F, Line 1(a) | (1,000) |
| Less: Gross Cattle Sales Allocated to Form 4797 | (84,268) |
| Total Sales – Raised Livestock Reported on Schedule F, line 2 | $417,409 |

During 2014 Mrs. Thompson received cooperative distribution income of $11,739, taxable interest income of $1,241, and agricultural program payment income of $58,287. Mrs. Thompson did not make any income tax payments for tax year 2014.

Although Mrs. Thompson operated a tax preparation business during the same year, the 2014 delinquent return did not include a Schedule C. Mrs. Thompson reported "Custom Hire (Machine Work) Income" of $55,163 on the Schedule F attached to the 2014 delinquent return. This Schedule F custom hire income is income from her tax preparation business. Mrs. Thompson deposited the following tax preparation income into Arvest account ending 2112 in tax year 2014:

| [*7] Date of Deposit | Description | Amount |
|---|---|---|
| 2/6/2014 | EPS Deposit | $804 |
| 2/10/2014 | EPS Deposit | 1,695 |
| 2/11/2014 | EPS Deposit | 528 |
| 2/12/2014 | EPS Deposit | 1,069 |
| 2/18/2014 | EPS Deposit | 220 |
| 2/18/2014 | EPS Deposit | 205 |
| 2/20/2014 | EPS Deposit | 1,011 |
| 2/25/2014 | EPS Deposit | 269 |
| 2/26/2014 | EPS Deposit | 589 |
| 2/27/2014 | EPS Deposit | 275 |
| 2/28/2014 | EPS Deposit | 529 |
| 4/23/2014 | EPS Deposit | 276 |
| 4/30/2014 | EPS Deposit | 504 |
| 2/7/2014 | Checks Deposited | 1,418 |
| 2/14/2014 | Checks Deposited | 3,753 |
| 2/24/2014 | Checks Deposited | 1,726 |
| 2/27/2014 | Checks Deposited | 4,103 |
| 3/10/2014 | Checks Deposited | 4,320 |
| 3/14/2014 | EPS Deposit | 215 |
| 3/14/2014 | Checks Deposited | 3,682 |
| 3/18/2014 | EPS Deposit | 210 |
| 3/24/2014 | Checks Deposited | 6,144 |
| 3/25/2014 | EPS Deposit | 304 |
| 4/2/2014 | Checks Deposited | 3,701 |
| 4/11/2014 | Checks Deposited | 13,168 |
| 4/21/2014 | Checks Deposited | 8,172 |
| 5/1/2014 | Checks Deposited | 1,137 |
| 5/5/2014 | Checks Deposited | 509 |
| 5/23/2014 | Checks Deposited | 414 |
| **Total** | | **$60,950** |

Mrs. Thompson acknowledged that these EPS and check deposits are income from her tax preparation service earned in tax year 2014.

[*8] On February 21, 2019, Mrs. Thompson provided a delinquent tax return for tax year 2015 to the IRS Office of Appeals (Appeals).[6] Respondent did not process this delinquent return. The 2015 tax return claimed joint filing status with her husband and included Schedule F and Form 4797. On Part I of Form 4797 Mrs. Thompson reported a gain of $33,624 from cattle sales. On Schedule F Mrs. Thompson claimed a deduction of $205,414 for contract labor and reported income of $58,170 from her tax preparation business as "Custom Hire (Machine Work) Income." On Schedule F, Mrs. Thompson also reported income from the sales of livestock as follows:

| *2015 Schedule F Income* | *Amount* |
|---|---|
| Cattle Sales | $224,983 |
| Simmons – Chicken/Egg Income | 239,670 |
| Less: Cattle Sales on Schedule F, Line 1(a) | (1,000) |
| Less: Gross Cattle Sales Allocated to Form 4797 | (33,624) |
| Total Sales – Raised Livestock Reported on Schedule F, Line 2 | $430,029 |

During 2015 Mrs. Thompson received cooperative distribution income of $9,348 and taxable interest income of $2,571. Mrs. Thompson did not make any income tax payments for tax year 2015.

On February 21, 2019, Mrs. Thompson provided a delinquent tax return for tax year 2016 to Appeals. Respondent did not process this delinquent return. The delinquent 2016 return claimed joint filing status with her husband and included Schedule F and Form 4797. On Schedule F, Mrs. Thompson claimed a deduction of $153,123 for Contract Labor and reported income of $58,479 from her tax preparation business, as "Custom Hire (Machine Work) Income." On Schedule F, Mrs. Thompson also reported income from the sales of livestock as follows:

---

[6] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). As the events in these cases predate this change, we will use the name in effect at all times relevant to these cases, i.e., the Office of Appeals.

| [*9] | 2016 Schedule F Income | Amount |
|---|---|---|
| Cattle Sales | | $216,739 |
| Simmons – Chicken/Egg Income | | 140,645 |
| Less: Cattle Sales on Schedule F, Line 1(a) | | (1,000) |
| Less: Gross Cattle Sales Allocated to Form 4797 | | (98,360) |
| Total Sales – Raised Livestock Reported on Schedule F, Line 2 | | 258,024 |

During 2016 Mrs. Thompson received cooperative distribution income of $7,439 and taxable interest income of $1,196. A U.S. Department of Agriculture payment of $101,566 was deposited into Mrs. Thompson's bank account on June 24, 2016. Mrs. Thompson did not make any income tax payments for tax year 2016.

## OPINION

I.    *Burden of Proof*

In general, the Commissioner's determinations set forth in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In cases of unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer with an income-producing activity or otherwise demonstrate that the taxpayer actually received unreported income. *Walquist v. Commissioner*, 152 T.C. 61, 67 (2019). After the Commissioner makes a requisite threshold showing, the burden of proof is with the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination was arbitrary or otherwise erroneous. *Helvering v. Taylor*, 293 U.S. 507, 515 (1935); *Tokarski v. Commissioner*, 87 T.C. 74 (1986); *see also Page v. Commissioner*, 58 F.3d 1342, 1347 (8th Cir. 1995), *aff'g* T.C. Memo. 1993-398.[7]

---

[7] Section 7491(a) provides that the burden of proof may shift to the Commissioner if the taxpayer "introduces credible evidence with respect to any [relevant] factual issue" and satisfies three additional conditions. Petitioners do not contend, and the record does not establish, that the burden of proof shifts to respondent under section 7491(a)(1). Therefore, the burden remains with petitioners.

**[\*10]** II.     *Unreported Income*

Gross income includes "all income from whatever source derived." I.R.C. § 61(a). Taxpayers must maintain and keep records substantiating their income and expenses. I.R.C. § 6001. If a taxpayer fails to do so, the Commissioner may determine the taxpayer's income through any method that clearly reflects income. I.R.C. § 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687.

The Commissioner can prove an underpayment of tax by proving a likely source of unreported income. *Estate of Beck v. Commissioner*, 56 T.C. 297, 363–64 (1971). Bank deposits are considered prima facie evidence of a taxpayer's receipt of income. *Parks v. Commissioner*, 94 T.C. 654, 658 (1990). Unidentified bank deposits are permitted to be treated as proof of unreported income where the deposits are regular or periodic, and there is evidence of an income-producing activity. *Gleckman v. United States*, 80 F.2d 394, 399 (8th Cir. 1935).

A.     *Unreported Income for 2011*

In 2011 petitioners realized cancellation of debt income of $2,064 when Capital One Bank forgave, or otherwise discharged for less than the full amount, a balance due. At trial petitioners did not address this adjustment; nor did they dispute the information reported on Form 1099–C from Capital One. Therefore, we determine respondent has met his burden.[8] Accordingly, this adjustment to petitioners' income is sustained.

B.     *Schedule C Gross Receipts, Farming Activity Income, Schedule F Cooperative Distribution Income, Taxable Interest Income for 2014, 2015, and 2016, and Schedule F Agricultural Program Payments in 2014*

At trial Mrs. Thompson confirmed that the EPS and check deposits into Arvest account ending 2112 totaling $60,950 for tax year

---

[8] If an information return, such as a Form 1099–C, serves as the basis for the determination of a deficiency, section 6201(d) may apply to shift the burden of production to the Commissioner. However, here, petitioners did not dispute the accuracy of this information return at trial, and therefore section 6201(d) has no application. *See McQuatters v. Commissioner*, T.C. Memo. 1998-88, 1998 WL 88180, at *3–4.

**[*11]** 2014 is the Schedule C income from her tax preparation business, "Custom Hire (Machine Work) Income" for that tax year. The parties also agreed at trial that the income of $58,170 and $58,479 for tax years 2015 and 2016, respectively, which was originally reported on Mrs. Thompson's Schedule F delinquent returns, was her Schedule C income from her tax preparation business for those same years.

By stipulation and at trial Mrs. Thompson testified that she agreed with respondent's determination of unreported income from farming activities stemming from the sale of cattle[9] and other livestock in tax years 2014, 2015, and 2016. Similarly, respondent established at trial that Mrs. Thompson had received cooperative distribution income of $11,739, $9,348, and $7,439 for tax years 2014, 2015, and 2016, respectively. Next, it was established that Mrs. Thompson had received taxable interest income of $1,241, $2,571, and $1,196 for tax years 2014, 2015, and 2016, respectively. Finally, it was established that Mrs. Thompson had received agricultural program payment income of $58,287 for tax year 2014.

Mrs. Thompson presented no evidence disputing these several sources of income, and in fact at trial she confirmed the accuracy of some of these income amounts, as reported on her delinquent returns. *See* Rule 142(a). Consequently, opposition to these adjustments to income (if any) is deemed conceded by Mrs. Thompson, *see* Rule 149(b), and the adjustments to her Schedule C income, farming activity income, Schedule F cooperative distribution income, and taxable interest income for tax years 2014, 2015, and 2016, and Schedule F agricultural program payments for tax year 2014 are sustained.

III.   *Schedule F Deductions*

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S 435, 440 (1934).

A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. I.R.C. § 6001;

---

[9] The sale of cattle yields capital gain income, while the sale of livestock yields ordinary income.

**[\*12]** *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. I.R.C. § 6001; Treas. Reg. § 1.6001-1(a), (e).

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court may sometimes estimate the amount allowable as a deduction. *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). There must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).

Section 162(a) allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the tax year in carrying on a trade or business. A business expense is "ordinary" if it is "normal, usual, or customary" in the taxpayer's trade or business or arises from a transaction "of common or frequent occurrence in the type of business involved." *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). An expense is "necessary" if it is "appropriate and helpful" to the taxpayer's business, but it need not be absolutely essential. *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966) (quoting *Welch v. Helvering*, 290 U.S. at 113). The determination of whether an expense satisfies the requirements of section 162 is a question of fact. *Cloud v. Commissioner*, 97 T.C. 613, 618 (1991) (citing *Commissioner v. Heininger*, 320 U.S. 467, 473–75 (1943)).

A.     *Insurance (Other than Health) Expense*[10]

Generally, premiums paid on insurance policies are deductible if the insurance coverage is ordinary and necessary for a taxpayer's trade or business, but no deduction is allowed for insurance with respect to property that is not used in a trade or business. *Rogers v. Commissioner*, T.C. Memo. 2014-141, at \*30; Treas. Reg. § 1.162-1(a).

For 2011 petitioners claimed a deduction of $12,290 on Schedule F for insurance (other than health). Respondent disallowed $2,001. Petitioners failed to produce any evidence to substantiate their

---

[10] Mrs. Thompson also claimed deductions on Schedule F for insurance expenses for tax years 2014, 2015, and 2016, but on brief respondent conceded that Mrs. Thompson is entitled to deduct these expenses. *See supra* note 3.

**[\*13]** entitlement to a deduction greater than the amount respondent allowed; therefore, the issue is deemed conceded and the adjustment of $2,001 to this claimed deduction is sustained. *See* Rule 149(b).

B.  *Feed Expense*[11]

For 2011 petitioners claimed a deduction of $14,672 on Schedule F for feed expenses. Respondent disallowed $7,883. Petitioners failed to produce any evidence to substantiate their entitlement to a deduction greater than the amount respondent allowed; therefore, the issue is deemed conceded and the adjustment of $7,883 to this claimed deduction is sustained. *See* Rule 149(b).

C.  *Other Expenses – Contract Labor*

Respondent disallowed claimed Schedule F deductions for contract labor expenses for tax years 2011, 2014, 2015, and 2016. More specifically, respondent disallowed any deduction for $74,274 of the $105,880 contract labor expenses petitioners reported for 2011. On her delinquent returns Mrs. Thompson claimed deductions for contract labor expenses of $218,400, $205,414, and $153,123 for tax years 2014, 2015, and 2016, respectively. Respondent determined Mrs. Thompson is entitled to deduct $126,639 in contract labor expenses for tax year 2014; therefore, he disallowed the difference. For tax years 2015 and 2016 respondent determined Mrs. Thompson was not entitled to deduct any contract labor expenses.

At trial Mrs. Thompson testified to the nature of the payments made, and she included bank statements reflecting payments made to her daughter, Kristie Pillow, to substantiate her contract labor expenses. However, these payments were commingled with others in her bank account. Mrs. Thompson's testimony was unhelpful in distinguishing the payments made to her daughter specifically for contract labor. The evidence Mrs. Thompson presented in support of the business purpose of these claimed deductions consists only of her self-serving testimony and uncorroborated documents. We are under no obligation to accept uncorroborated and self-serving testimony. *See Higbee v. Commissioner*, 116 T.C. 438, 445 (2001); *Tokarski*, 87 T.C. at 77.

---

[11] Mrs. Thompson also claimed a deduction for Schedule F feed expenses for tax years 2014, 2015, and 2016, but on brief respondent conceded that Mrs. Thompson is entitled to deduct these expenses. *See supra* note 3.

**[\*14]** Considering all the facts and circumstances before us, we conclude that Mrs. Thompson has not provided evidence adequately substantiating her contract labor expenses beyond the amounts respondent determined for tax years 2011 and 2014. Therefore, respondent's partial disallowance of the claimed contract labor expenses for tax years 2011 and 2014, and full disallowance of these claimed expenses for tax years 2015 and 2016, are sustained.

IV.    *Additions to Tax*

Section 6651(a)(1) and (2) imposes additions to tax for failure to file a return and failure to pay the amount shown as tax on a return, respectively, on or before the date prescribed unless the taxpayer proves that such failures are due to reasonable cause and not due to willful neglect. *See* Treas. Reg. § 301.6651-1(c). Willful neglect is defined as a "conscious, intentional failure or reckless indifference." *United States v. Boyle*, 469 U.S. 241, 245 (1985). Reasonable cause for failure to file exists where the taxpayer exercised ordinary care and prudence but was nevertheless unable to file the return by the due date. *Id.* at 246. Reasonable cause for failure to pay exists where the taxpayer exercised ordinary business care and prudence in providing for payment but was nevertheless either unable to pay the tax or would have suffered undue hardship if the tax was paid. *See* Treas. Reg. § 301.6551-1(c)(1).

A.    *Section 6651(a)(1) Failure to Timely File Additions to Tax*

Section 6651(a)(1) provides for an addition to tax of 5% of the tax required to be shown on a return for each month (or fraction thereof) for which there is a failure to file a return, not to exceed 25% in the aggregate. Respondent determined petitioners were liable for an addition to tax under section 6651(a)(1) for the 2011 tax year since the IRS did not receive the 2011 joint return until April 13, 2015. Respondent determined that Mrs. Thompson was liable for additions to tax under section 6651(a)(1) for tax years 2014, 2015, and 2016 since Mrs. Thompson failed to file returns for these tax years. On January 5, 2018, respondent prepared SFRs for Mrs. Thompson for tax years 2014, 2015, and 2016. The SFRs are treated as tax returns filed by Mrs. Thompson. *See* I.R.C. § 6651(g)(2).

Except for Mrs. Thompson's own self-serving testimony, which we are not required to, and will not, rely on, she provided no evidence that her failure to file tax returns for tax years 2014 through 2016 was due to reasonable cause and not due to willful neglect. *See Neonatology*

**[\*15]** *Assocs., P.A. v. Commissioner*, 115 T.C. 43, 84 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002). In fact, Mrs. Thompson confirmed that she had acted as a paid return preparer and that she had prepared dozens of tax returns during the tax years at issue—just not her own. Accordingly, we will sustain the section 6651(a)(1) additions to tax as determined by respondent.

B.    *Section 6651(a)(2) Failure to Timely Pay Additions to Tax*

Under section 6651(a)(2), an addition to tax is also imposed for failure to timely pay the amount shown as tax on a return, unless the failure is due to reasonable cause and not willful neglect. The amount of the addition to tax is 0.5% of the amount of tax required to be shown on the return, with an additional 0.5% for each month the return is delinquent, not to exceed 25% in the aggregate. I.R.C. § 6651(a)(2).

By stipulation respondent introduced account transcripts for Mrs. Thompson reflecting that no tax payments were made for tax years 2014 through 2016. At trial Mrs. Thompson provided no explanation or other evidence supporting a reasonable cause defense for her failure to pay the amounts shown on the SFRs filed under section 6020. Accordingly, we find that Mrs. Thompson has failed to establish reasonable cause, and we will sustain the section 6651(a)(2) additions to tax as determined by respondent.

C.    *Section 6654 Failure by Individual to Pay Estimated Income Tax*

Section 6654(a) provides for an addition to tax for an individual's underpayment of estimated tax. Estimated income tax must be paid quarterly in an amount equal to 25% of the lesser of (1) 90% of the tax required to be shown on the current year's tax return or (2) if the taxpayer filed for the previous year, 100% of the tax shown on the prior year's tax return. *See* I.R.C. § 6654(c) and (d)(1). To meet his burden of production, respondent must show that Mrs. Thompson had an obligation to make estimated tax payments. *See Wheeler v. Commissioner*, 127 T.C. 200, 211–12 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008). That is, respondent must introduce evidence of whether Mrs. Thompson filed a tax return for the prior year and whether she had a tax liability for each of the years at issue. *See id.* The due dates of the required estimated payments for a calendar year taxpayer are April 15, June 15, and September 15 of the calendar year in question and January 15 of the following year. I.R.C. § 6654(c)(2).

**[\*16]** As explained above respondent has met his burden with respect to this addition to tax for years 2015 and 2016, since the Stipulation reflects account transcripts for years 2014 through 2016 for Mrs. Thompson with no tax deposits, and SFRs under section 6020 reflect unpaid tax. *See Wheeler*, 127 T.C. at 210–11. Mrs. Thompson has not shown that any of the statutory exceptions under section 6654(e) applies. Accordingly, we will sustain the section 6654(a) additions to tax as determined by respondent.

V.    Conclusion

We have considered all of the arguments that the parties made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*